IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JULIUS STEWART,

      Petitioner,

v.                                       No. CIV 03-687 WPJ/LFG

TIM LeMASTER,

      Respondent.

### MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

#### Findings

    1.    This is a proceeding on a petition for writ of habeas corpus under 28 U.S.C. § 2254, filed June 9, 2003. [Doc. 1]. Respondent filed his Answer [Doc. 11] on July 10, 2003, and requested dismissal of the petition. Petitioner Julius Stewart ("Stewart") filed a reply [Doc. 12] to the Answer on July 22, 2003. Stewart currently is confined at the New Mexico State Penitentiary in Santa Fe, New Mexico.

    2.    On March 9, 1995, Stewart pled guilty in CR 94-914 to a charge of armed robbery of a motor vehicle (with a firearm enhancement). [RP 0098.] The Judgment, Partially Suspended

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Sentence and Commitment was entered August 25, 1995 by Judge James F. Blackmer. [RP 0120.] Stewart was sentenced to a term of incarceration for nine (9) years on the armed robbery charge, a mandatory one (1) year for the firearm enhancement, plus four (4) years mandatory as a habitual offender for a total of fourteen (14) years, six (6) of which were suspended. Thus, Stewart was to be incarcerated for a total of eight (8) years, to be served concurrently with a sentence he was already serving. Once he served the 8 year period of incarceration, Stewart was to be placed on supervised probation for five (5) years on condition that he obey all rules, regulations and orders of the Probation Authorities.

   3. As of about September 24, 1998, Stewart had completed his 8-year period of incarceration with good time credit and commenced his 5-year period of probation. At his request, his probation was transferred to Missouri City, Texas. [RP 0178.]

   4. In early July 2000, while still on probation, Stewart was charged in New Mexico with two separate crimes involving receiving and transferring a stolen vehicle and the unlawful taking of a motor vehicle. (Criminal Cause Nos. 00-4212 and 01-1544.) [RP 0178-79.] He was not indicted on these charges until some months later. On July 17, 2000, Stewart's Probation Officer presented a report to the state court, alleging Stewart violated conditions of his probation. [RP 0179.] On August 8, 2000 the State filed a motion to revoke Stewart's probation. [RP 0179.]

   5. On October 18, 2001, a probation revocation hearing was held, and Stewart was found to be in violation of his conditions of probation with respect to having violated the laws of the State of New Mexico or the laws of another jurisdiction. [RP 216.] On October 22, 2001, an Order and Commitment was entered on the probation violations. Stewart's probation was revoked and he was remanded and committed to a period of incarceration 18 years followed by a 2-year parole term.

[RP 0217.] Stewart received credit for 8 years, 365 days were suspended and 1,118 days of probation were credited, with the resulting balance of 2,167 days of confinement. [RP0218.] The 2,167 days of confinement amount to almost exactly 6 years of incarceration.

6.  As grounds for federal habeas review, Stewart sets forth three separate claims: (1) illegal arrest leading to the probation violation and due process violation [doc. 1, p. 6]; (2) improper doubling of habitual offender enhancement from four to eight years [doc. 1, p. 7]; and (3) being over-sentenced to seven years when only six years were authorized [doc. 1, p. 9.]

7.  Respondent states that Stewart has exhausted his claims in state court and no longer has any state court remedy available but argues that all three grounds raised by Stewart may be procedurally defaulted because he failed to file a petition for writ of certiorari following the state court's denial of his state habeas corpus petition. [Doc. 11, p. 2.] The State also argues that claims one and two are procedurally barred because Stewart did not raise these claims on direct appeal. Even if Stewart's claims are not procedurally barred, the State argues that he fails to state any meritorious constitutional claims sufficient to satisfy the requirements of § 2254.

## Factual and Procedural History

8.  The most complete factual summation in this criminal cause number (94-914) is provided by Judge Blackmer in his 17-page decision, "Order on Motion to Dismiss Motion to Revoke Probation," filed July 13, 2001. [RP 0177.] Here, the Court attempts to summarize only the most pertinent facts and chronology with respect to the three claims Stewart asserts in this § 2254 petition.

However, the Court has carefully examined the entire record proper in 94-914, and also the entire record proper in the two other related criminal cases, 00-4212 and 01-1544.[2]

9. On March 9, 1995, Stewart signed the Repeat Offender Plea and Disposition Agreement ("Plea Agreement") in 94-914. [RP 0098.] The Plea Agreement sets forth Stewart's admissions to approximately eight prior felony convictions. [Id.] Because of this prior criminal history, Stewart could have been sentenced under NMSA § 31-18-17(D) as a habitual offender whose basic sentence "shall be increased by eight years" due to having incurred three or more prior felony convictions. However, the plea disposition to which he agreed gave him the benefit of being sentenced as a habitual offender with two felony convictions, requiring an enhancement of only four years under § 31-18-17(C). The Plea Agreement also expressly states that if Stewart is ordered to serve a period of probation and violates that probation, he could be incarcerated for the balance of the sentence and also ordered to serve up to eight (8) years of incarceration as a habitual offender. [RP 0100.] In addition, the written agreement provides that if Stewart violates any law before completing his sentence, the State could bring additional habitual offender proceedings. [RP 0101.] Stewart's signature appears on page 5 of the Plea Agreement, directly below the statement that he understands his sentence is subject to modification if he violates the terms and conditions of probation. [RP 0103.]

10. On January 5, 1996, an Order of Probation was entered providing special and standard conditions of probation for Stewart. [RP 0124.] Standard probation conditions included promises

---

[2] CR 00-4212 was dismissed on September 17, 2001. The State entered Nolle Prosequi because of insufficient evidence to prove guilt. [RP 0125 in 00-4212.] It appears that CR 01-1544 may be proceeding. As of November 18, 2003, the New Mexico Court of Appeals considered and granted the State's appeal regarding rulings made in favor of Stewart by Judge Allen in that case. Thus, Judge Allen's rulings suppressing certain statements made by Stewart and dismissing Count I in that case were reversed. State v. Stewart, No. 23,137 (N.M. Ct. App. Nov. 18, 2003).

by Stewart not to violate any of the laws of the State of New Mexico or the laws of any other jurisdiction, not to endanger the person or property of another, and to report to the Probation Officer as often as requested. On December 15, 1995, Stewart signed the probation conditions. Directly above his signature, the agreement states that he had read and understood the terms of the Probation Agreement and promised to abide by its terms. [RP 0125.]

11.     As stated above briefly, Stewart served his 8 years of incarceration and proceeded to his 5 year period of probation, during which he was charged with violating conditions of probation including arrests for the receipt and/or taking of stolen vehicles and failure to report to probation. [RP 0132, 0179.] Although he was charged with probation violations in August 2000, the probation revocation hearing was not held until October 18, 2001. During this period of time, the state court set at least seven different probation revocation hearings. [*See, eg.,* RP 0142, 0168, 0169, 0181, 0182, 0184, 0185.] It is disputed as to which party the delay was attributed, but at least some of the delay was caused by Stewart's frequent requests for and receipt of new counsel (four attorneys represented him, and at one hearing, his sister, an attorney from Texas, argued a motion on his behalf). In addition, some of the delay was caused by the parties' attempt to negotiate a plea agreement resolving three different criminal causes of action, one of which had not been indicted at the time. The state court generally attributed the delay to Stewart since the resolution of all three criminal matters would have been to his benefit. [RP 0179-0193.]

12.     Ultimately, Stewart was found to have violated conditions of his probation and was sentenced to a period of approximately 6 years. The Amended Supplemental Information, entered October 22, 2001, sets out Stewart's prior eight felony convictions, including the conviction in 94-914. [RP 0213-14.] The Information states that Stewart's sentence for the offense in 94-914 should

be enhanced, in accordance with § 31-18-17(D), by eight years due to his status as a habitual offender. [RP 0214.] Under the statute, if a person is convicted of a noncapital felony, who has incurred three or more prior felony convictions, his basic sentence "shall be increased by eight years. . . ." His signed plea agreement in 94-914 expressly provided that if Stewart later violated probation, he could be incarcerated for the balance of his sentence and ordered to serve up to eight years of incarceration as a habitual offender. [RP 0100.]

       13.      On November 19, 2001, Stewart took a direct appeal from the probation violation conviction. [RP 0222.] In the direct appeal, Stewart's attorney argued that: (1) the hearing on probation violations was not heard within a reasonable period of time and violated his right to a speedy trial; (2) Judge Murdoch improperly denied Stewart an additional 6 months of credit against his sentence that Judge Blackmer had agreed to grant him; (3) the probation department failed to complete appropriate paperwork to place him on probation which left him without due process and notice of his probationary obligations; (4) the State's delay in filing an addendum regarding probation violations violated his due process rights; (5) Stewart was denied due process when none of the original alleged violations of probation were addressed at the probation revocation hearing; (6) Stewart's attorney's stipulation to the assignment of Judge Murdoch to the case after Blackmer recused (following Stewart's motion to disqualify Judge Blackmer) violated his due process rights; and (7) Stewart's statements to Judge Blackmer in the arraignment of 01-1544 were not voluntary and should have been excluded. [RP 0227-0235.]

       14.      On March 8, 2002, the New Mexico Court of Appeals filed its proposed summary affirmance as to the appeal. [RP 0240.] On May 20, 2002, Stewart, through counsel, filed his memorandum in opposition of the proposed summary affirmance. [Doc. 1, Ex. F.] On June 17,

2002, the New Mexico Court of Appeals filed a Memorandum Opinion denying the appeal. [RP 0265.]

15. On August 7, 2002, Stewart filed a *pro se* Petition for Writ of Habeas Corpus in state court. [RP 0249.] Stewart argued that: (1) the probation revocation was in error if it was based on an Oklahoma conviction because he was not convicted of any crime in Oklahoma; (2) probation authorities did not advise him as to what would happen if he violated conditions of his probation and he was erroneously sentenced to "two habituals" for one crime; (3) probation authorities had no right to recommend that the State move to revoke his probation since the probation officer admitted she had had no contact with Stewart; (4) unlawful arrest in connection to the probation violations; (5) his guilty plea was unlawfully induced; (6) statements made to Judge Blackmer during the arraignment in 01-1544 were involuntary; and (7) his defense attorney failed to properly investigate the case and he was not adequately defended by counsel. [RP 0249-254.] Stewart also stated that some of these grounds had not been raised previously due to ineffective assistance of counsel. On November 5, 2002, Stewart filed an addendum to his petition, adding two claims: (8) the court erred with respect to the habitual sentence; and (9) the court erred in sentencing him to 6 years. [RP 0274.] On January 15, 2003, Stewart filed another addendum adding another two claims: (10) the court lacked jurisdiction to add a four year habitual offender sentence; and (11) he was denied his right to appeal his prior *pro se* motion to dismiss for alleged delay of his right to a speedy trial. [RP 0275.]

16. On February 11, 2003, approximately six months after Stewart filed the original petition for writ of habeas corpus, Judge Murdoch issued an Order denying Stewart's petition. [RP 0278.] Judge Murdoch wrote that Stewart had admitted his probation violation and accepted the disposition. In doing that, he nullified each of his claims regarding the actions and authority of

probation officials. Judge Murdoch wrote that Stewart's acceptance was free and voluntary and made with full knowledge. With respect to the habitual time, Judge Murdoch found that it was appropriate because half of it had been held in abeyance should there be a violation of probation conditions, which there later was. Judge Murdoch further explained that Stewart continuously received plea deals which were in his best interest and only through his own misconduct did his condition worsen. [RP 0279.]

      17.    Rather than filing a petition for writ of certiorari after this denial of Stewart's state habeas corpus petition, on February 21, 2003, he filed a *pro se* motion in the Second Judicial District for hearing for post-conviction relief of all issues stated on petition for writ of habeas corpus. [RP 0280.] In this motion, he argued that the court again had no jurisdiction to impose a 4 year habitual sentence after he had finished his underlying sentence, the state violated his Fourth Amendment rights with respect to the alleged illegal arrest, and he was illegally sentenced to 7 year rather than 6 years. He requested a rehearing and that his conviction be set aside. [Id.] On the same day (February 21), Judge Murdoch denied the motion stating that "all issues addressed in previous ruling of the Court." [RP 0283.]

      18.    On March 7, 2003, Stewart filed a *pro se* Notice of Appeal from the Court's denial of the motion for post-conviction relief. Stewart stated that he had never received any status or disposition of his state petition for writ of habeas corpus and that the Court never had addressed the issues stated in his motion for post conviction relief. [RP 0284.] On April 2, 2003, Stewart wrote to the district court clerk stating that as of March 11, 2003, he had not received a ruling on his petition for writ of habeas corpus and that he had been transferred to a different facility on February 13, 2003. He indicated that he was aware that he had only 30 days in which to file a petition for writ

8

of certiorari should his habeas petition be denied. [RP 0286.] On March 20, 2003, Stewart filed a *pro se* petition for writ of certiorari, which was assigned a number of 27,973. [Doc. 11, Ex. P.] On April 2, 2003, the New Mexico Supreme Court issued an Order stating that it had considered the petition for writ of certiorari and was denying the request. [Doc. 11, Ex. Q.][3]

19.     In the State's Answer, it argues that Stewart's petition for writ of certiorari was untimely as it was filed more than 30 days after the state court denied the petition for writ of habeas corpus. In Stewart's reply to the Answer, he attaches a pleading with the New Mexico Supreme Court caption and a date of August 13, 2002, with the number of 27,973. This pleading grants him a motion for extension of time to file a petition for writ of certiorari until April 10, 2003, and yet there is no motion for extension that has been supplied to the Court. [Doc. 11, Ex. C.] Th extension pleading appears only as an exhibit to Stewart's reply. It is neither part of the record proper that was submitted to this Court nor a part of the State's Answer. The State did not address this pleading but would not have had the opportunity to do so since it first appeared as part of Stewart's reply. It is unclear why, as of August 13, 2002, this number (27,973) could have been assigned since Stewart did not file his petition for writ of certiorari until March 2003. It is also unclear why he would have been given such a lengthy extension as of August 13, 2002. However, it appears that the Supreme Court ultimately considered and denied the petition for writ of certiorari on the merits. There is no indication in its April 2003 Order that the Court denied the petition on grounds of untimeliness.

20.     On June 9, 2003, Stewart filed this federal petition for writ of habeas corpus.

---

[3]For some reason, not all of these pleadings were included or made part of the Record Proper in 94-914 and instead were attached as exhibits to the parties' pleadings.

## **Procedural Default**

21.     When the State argues procedural default, the federal court must first address whether the claims were procedurally defaulted before reaching their merits.  "Where a state has raised and preserved the issue of procedural default, federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice."  Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.) (*citing* Coleman v. Thompson, 501 U.S. 722, 750 (1991)), *cert. denied*, 525 U.S. 950 (1998) ; McPherson v. Miers, 7 Fed. Appx. 845, 2001 WL 280452 (10th Cir. Mar. 22, 2001) (failure to raise an issue on direct appeal in New Mexico waives that issue for purposes of post-conviction relief.)

22.     In New Mexico, the failure to raise an issue on direct appeal waives that issue for purposes of post-conviction relief. Jackson, 143 F.3d at 1318.  In Jackson, the petitioner argued that there was no procedural default for failure to raise an issue on direct appeal because New Mexico does not strictly or regularly apply the rule that issues not raised on direct appeal may not be raised in a habeas petition.  Id.  The Tenth Circuit rejected this argument, finding that such a rule is "'adequate' for purposes of federal habeas procedural default doctrine if 'the [state] court's actual application of the . . . rule to all similar claims has been evenhanded 'in the vast majority' of cases.'"  Id.  "Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief."  Id.  Thus, the federal court may be precluded from addressing issues in a petitioner's federal habeas petition if he failed to raise them in his direct criminal appeal.  Such failure constitutes an

independent, adequate state procedural ground unless petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice.  Id.

23.   Here, the State argues that grounds one and two are procedurally defaulted because Stewart did not raise these claims (illegal arrest and improperly enhanced sentence for habitual offender status upon probation revocation conviction) on direct appeal.  It is true that Stewart raised neither of these grounds on direct appeal, although he did raise them subsequently in his state habeas proceedings.

24.   Moreover, Stewart makes no showing or even attempt of showing "cause" excusing his default and "actual prejudice" resulting from errors of which he claims, "both of which are required to overcome a presumption of dismissal when issues are raised for the first time on collateral attack; nor, alternatively, does he demonstrate a fundamental miscarriage of justice."  McPherson, 7 Fed. Appx. at 848-49; 2001 WL 280452 at *3.

25.   Because Stewart failed to raise grounds one and two in his direct appeal of the probation violation conviction and because he does not show cause and prejudice or fundamental miscarriage of justice, he is procedurally barred from raising these issues in this federal habeas petition.  Thus, the Court recommends dismissal of grounds one and two.

26.   The State could have argued that ground three (improperly sentenced to seven instead of six years) also should be dismissed for Stewart's failure to raise this claim on direct appeal. Instead, however, the State argues it should be procedurally defaulted because Stewart failed to file a petition for writ of certiorari following the denial of his state habeas petition.  [Doc. 11, p. 5.]

27.   The Court does not know why the State claims Stewart never filed a petition for writ of certiorari.  This is untrue.  Stewart did file a petition for writ of certiorari although it might have

11

been viewed as untimely. Notwithstanding the possibility that it was late, which is unclear due to the pleading purportedly allowing Stewart an extension of time to file his petition, the New Mexico Supreme Court appeared to review Stewart's petition on the merits. Nothing in its Order denying the petition indicates that the Court rejected it due to untimeliness. Thus, this Court does not find that ground three is procedurally barred based on an untimely petition for writ of certiorari.

28.     It also is unclear why the State did not make the argument that ground three is procedurally barred for Stewart's failure to raise the claim on direct appeal, because his direct appeal did not include this claim. The Court could raise the state procedural bar defense *sua sponte*, Hardiman v. Reynolds, 971 F.2d 500, 505 (10th Cir. 1992), but instead will resolve it on the merits. *See* Guzman v. Williams, 185 F.3d 874 (Table, Text in Westlaw), 1999 WL 430059 at *3 (10th Cir. June 28, 1999) (proceeding to the merits of the claim).

29.     Here, ground three may actually overlap with ground two. Ground three consists of Stewart's argument that he was improperly sentenced to seven years after the probation revocation conviction rather than a maximum of six years. It is not entirely clear what Stewart means when he states he was improperly sentenced to seven rather than six years. The Order and Commitment reveals that he was sentenced to 18 years. He essentially received credit for 12 years and was left with a sentence of about 6 years, plus 2 years probation. To the extent that this argument is again one that he was improperly given another four years for being a habitual offender, this possibility was clearly envisioned in his earlier plea agreement that expressly stated he could face a habitual offender

enhancement of 8 years if he violated conditions of probation.[4] Stewart signed the agreement; he also signed off on standard conditions of probation that he knew he needed to abide by once on probation. Indeed, Stewart was initially given the benefit of the doubt in the plea deal by being assessed only a 4-year enhancement for being a habitual offender when he could have received the full 8-year enhancement. It was because of his own actions and misconduct that he later was assessed the full 8-year enhancement. Therefore, even if this claim is considered on the merits, it must fail. Accordingly, the Court recommends that ground three be dismissed.

## Recommended Disposition

That Stewart's § 2254 petition [doc. 1] be denied and that the case be dismissed with prejudice.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[4] Even if Stewart had argued more clearly that the "second enhancement" of his sentence violated the constitutional prohibition against double jeopardy, the argument would have failed. The Tenth Circuit rejected this exact argument in a somewhat similar case. Montoya v. State of New Mexico, 55 F.3d 1496, 1498 (10th Cir. 1995). In Montoya, the petitioner challenged on double jeopardy grounds a sentence enhanced twice under NMSA § 31-18-17 - 31-18-20. Montoya, like Stewart, entered into a plea agreement admitting to some prior felonies. A benefit of his plea negotiations included a one-year habitual offender enhancement rather than the additional years that his criminal history could have warranted. The terms of his plea agreement, like those of Stewart's, expressly contemplated the possibility that the State could pursue additional habitual offender proceedings to enhance Montoya's sentence if his probation was revoked. Id. Following his prison term, Montoya, like Stewart, was found to have violated the conditions of his probation and his probation was revoked. Montoya was sentenced to the previously suspended sentence plus an additional four years as a habitual offender. Id. The Court reasoned that a defendant could waive his double jeopardy defense by means of a plea agreement. Montoya (like Stewart) "made a bargain that specifically contemplated the possibility of further charges against him. He then chose to realize that possibility by breaching the terms of the agreement. '[T]he Double Jeopardy Clause does not relieve him from the consequences of that choice.'" Id. at 1499.